IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MARKS SOUZA, | CASE NO. CV F 07-0622 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| vs. | (Doc. 9.) |
| COUNTY OF MERCED, et al., | |
| Defendants. | |

**INTRODUCTION**

Defendants[1] seek to dismiss plaintiff Richard Marks Souza's ("Mr. Souza's") 42 U.S.C. § 1983 ("section 1983") and related claims on grounds that individual defendants are entitled to immunity and that the entity defendants are not subject to *Monell* liability. Defendants further seek to dismiss Mr. Souza's punitive damages claims. In the absence of Mr. Souza's timely opposition, this Court considered defendants' motion to dismiss on the record and VACATES the June 19, 2007 hearing, pursuant to Local Rule 78-230(c) and (h). For the reasons discussed below, this Court DISMISSES with prejudice Mr. Souza's claims.

---

[1] The entity defendants are the County of Merced ("County"), the County Sheriff's Office ("Sheriff's Office") and the County District Attorney's Office ("DA's Office"). The individual defendants are County District Attorney Larry D. Morse II ("DA Morse"), agricultural crime detective Frank Swiggert ("Detective Swiggert"), former County Sheriff Gary Carlson ("Sheriff Carlson"), and former County Sheriff Mark N. Pazin ("Sheriff Pazin"). The above entity and individual defendants will be referred to collectively as "defendants."

1

# BACKGROUND

## Mr. Souza's Arrest

On December 4, 2002, two County Sheriff's deputies responded to a report of stolen fuel at a ranch in Le Grand, California. The ranch's manager showed the deputies the diesel container from which the fuel had been stolen, tire tracks and shoe prints with a "Wolverine" logo. The deputies followed a trail of diesel fuel spillage out of the ranch and down roads to a dirt driveway with locked gate on property on White Rock Road ("property"). Tire tracks and shoe prints at the gate matched those at the crime scene. Detective Swiggert was contacted and took over the investigation.

Detective Swiggert photographed the fuel trail, tire tracks and shoe prints. The property's owner informed Detective Swiggert that Mr. Souza had farmed the property. Detective Swiggert drove the property and found three large fuel tanks and more apparent matching tire tracks and shoe prints. Mr. Souza arrived as Detective Swiggert checked the fuel tanks, said he knew nothing about the fuel theft, and consented to Detective Swiggert's inspection of the property. The soles of Mr. Souza's boots had a "Wolverine" logo.

On January 3, 2003, pursuant to a search warrant, Mr. Souza's boots with "Wolverine" logo on soles were seized. On February 7, 2003, the DA's office filed a criminal complaint against Mr. Souza to allege that he committed grand theft of more than $400 of diesel fuel to violate California Penal Code section 487(a). Pursuant to an arrest warrant, Mr. Souza was arrested on February 10, 2003. On February 2, 2006, after many proceedings, the DA's Office dismissed the charges against Mr. Souza.

## Mr. Souza's Claims

On April 24, 2007, Mr. Souza filed his complaint in this action to allege three claims. The (first) section 1983 cause of action alleges that defendants deprived Mr. Souza of his constitutional rights to be free from excessive and unreasonable force and to speedy trial and of life, liberty and property without due process of law. The (second) defamation cause of action alleges that defendants "knowingly made false statements or reasonably should have known were false concern [sic] the guilt and/or the Plaintiff's involvement in a crime." The (third) intentional infliction of emotional distress cause of action alleges that defendants "embarked on an intentional, malicious and willful course of conduct intended to cause plaintiff to suffer extreme mental and emotional distress, agony and anxiety, which

he in fact did suffer." The complaint prays for punitive damages against the County.

Defendants seek to dismiss Mr. Souza's claims on grounds that:

1. The DA's Office, Sheriff's Office, DA Morse, Detective Swiggert, Sheriff Carlson and Sheriff Pazin are entitled to immunity;

2. The County is not subject to *Monell* liability; and

3. Mr. Souza's claims for punitive damages are barred as unrecoverable from a public entity.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion Standards

Defendants seek dismissal of Mr. Souza's causes of action and punitive damages claim under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

With these standards in mind, this Court turns to defendants' motion to dismiss Mr. Souza's causes of action and punitive damages claim.

## Absolute Prosecutorial Immunity

The DA's Office and DA Morse (collectively "DA defendants") contend they are entitled to absolute prosecutorial immunity to bar Mr. Souza's claims. State prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official capacity. *See Imbler v. Pachtman*, 424 U.S. 409, 427, 430-431, 96 S.Ct. 984 (1976); *Gabbert v. Conn*, 131 F.3d 793, 800 (9th Cir. 1997); *Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir. 1989).

"In determining whether absolute immunity is available for particular actions, the courts engage in a 'functional' analysis of each alleged activity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3rd Cir. 1992). In *Schlegel v. Bebout*, 841 F.2d 937, 943-944 (9th Cir. 1988), the Ninth Circuit Court of Appeals provided guidance to determine the scope of prosecutorial immunity:

> Our inquiry must center on the nature of the official conduct challenged, and not the status or title of the officer. As a result, we must examine the particular prosecutorial conduct of which [plaintiff] complains. If we determine that the conduct is within the scope of [defendants'] authority and is quasi-judicial in nature, our inquiry ceases since the conduct would fall within the sphere of absolute immunity.
>
> To determine whether conduct of a state official is within his or her authority, the proper test is not whether the act performed was manifestly or palpably beyond his or her authority, but rather whether it is more or less connected with the general matters *committed* to his or her control or supervision. . . .
>
> Absolute immunity depends on the function the officials are performing when taking the actions that provoked the lawsuit. We must look to the nature of the activity and determine whether it is "intimately associated with the judicial phase of the criminal process." . . . Investigative or administrative functions carried out pursuant to the preparation of a prosecutor's case are also accorded absolute immunity. (Emphasis in original; citations omitted.)

The classification of the challenged acts, not the motivation underlying them, determines whether absolute immunity applies. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986)(en banc).

Prosecutors and other eligible government personnel are absolutely immune from section 1983 damages in connection with challenged activities related to the initiation and presentation of criminal prosecutions. *Imbler*, 424 U.S. 409; *see also Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 507 (1997); *Gabbert*, 131 F.3d at 800; *Roe v. City of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997); *Gobel*, 867 F.2d at 1203. "[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if

4

those actions were performed as part of the prosecutor's preparation of his case, even if they can be characterized as 'investigative' or 'administrative.'" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810 (1985). A prosecutor is absolutely immune when making a decision to initiate a prosecution "even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki*, 969 F.2d at 1463-1464. "We think that conferring with potential witnesses for the purpose of determining whether to initiate proceedings is plainly a function 'intimately associated with the judicial phase of the criminal process,' *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995, and is therefore a quasi-judicial function 'to which the reasons for absolute immunity apply with full force.'" *Demery*, 735 F.2d at 1144. Immunity extends to "the preparation necessary to present a case," including "obtaining, reviewing, and evaluation of evidence." *Kulwicki*, 969 F.2d at 1465 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414 (3rd Cir. 1991)).

Absolute prosecutorial immunity applies even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427, 96 S.Ct. at 993. Even charges of malicious prosecution, falsification of evidence, coercion of perjured testimony and concealment of exculpatory evidence will be dismissed on grounds of prosecutorial immunity. *See Stevens v. Rifkin*, 608 F.Supp. 710, 728 (N.D. Cal. 1984). Further activities intimately connected with the judicial phase of the criminal process include making statements that are alleged misrepresentations and mischaracterizations during hearings and discovery and in court papers, *see Fry v. Melaragno*, 939 F.2d 832, 837-838 (9th Cir. 1991), and conferring with witnesses and allegedly inducing them to testify falsely, *see Demery*, 735 F.2d at 1144.

In addition to common law absolute immunity, the DA defendants point to immunity under California Government Code section 821.6 ("section 821.6"):

> A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Mr. Souza's complaint fails to allege specific acts or wrongs attributable to the DA defendants. The complaint broadly alleges that defendants deprived Mr. Souza of constitutional rights and of life, liberty and property without due process of law. The events at issue fall within the scope of official conduct and authority of the DA defendants to cloak them with absolute prosecutorial immunity. As

5

such, Mr. Souza's claims against the DA defendants are barred.

## State Law Immunity For The Sheriff's Office, Detective Swiggert And Sheriffs Carlson And Pazin

The Sheriff's Office, Detective Swiggert and Sheriffs Carlson and Pazin (collectively the "Sheriff's defendants") also rely on section 821.6 immunity to claim that it covers them for formal judicial proceedings and investigations arising in the context of such proceedings. The Sheriff's Office appears to contend further that California Government Code section 815.2(b) applies in that it provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Section 821.6 "is not restricted to legally trained personnel but applies to all employees of a public entity." *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1436, 246 Cal.Rptr. 609, 615 (1988) (Section 821.6 immunity applies to investigation, preliminary notice, institution and prosecution of administrative proceedings). Although the section is principally used for suits for damages for malicious prosecution, it is not limited to that use. *Kayfetz v. State of California,* 156 Cal.App.3d 491, 497, 203 Cal.Rptr. 33 (1984) (libel suit concerning publication of disciplinary action against physician after institution of proceedings and before dismissal of the action); *Brown v. City of Los Angeles,* 267 Cal.App.2d 849, 850-851, 73 Cal.Rptr. 364 (1968) (suit for damages from erroneous notice of zoning violations causing plaintiff to close business). "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that [the officer] be protected from harassment in the performance of that duty." *Blackburn v. County of Los Angeles*, 42 Cal.App.3d 175, 178, 116 Cal.Rptr. 622 (1974).

Section 821.6 is not limited to the act of filing a criminal complaint. *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209, 34 Cal.Rptr.2d 319, 321 (1994). Instead, it also extends to actions taken in preparation for formal proceedings. *Amylou*, 28 Cal.App.4th at 1209-1210, 34 Cal.Rptr.2d at 321. Because investigation is "an essential step" toward the institution of formal proceedings, it "is also cloaked with immunity." *Kemmerer,* 200 Cal.App.3d at 1436-1437, 246 Cal.Rptr. 609; *see, e.g., Johnson v. City of Pacifica*, 4 Cal.App.3d 82, 84 Cal.Rptr. 246 (1970) (police officers immune for their negligent investigation of a crime); *Stearns v. County of Los Angeles,* 275 Cal.App.2d

134, 136-137, 79 Cal.Rptr. 757 (1969) (negligent performance of autopsy); *Jenkins v. County of Orange,* 212 Cal.App.3d 278, 283-284, 260 Cal.Rptr. 645 (1989) (negligent investigation by social worker of reports of child abuse); *Randle v. City and County of San Francisco*, 186 Cal.App.3d 449, 456-457, 230 Cal.Rptr. 901, 905-906 (1986) (prosecutor and investigating police officer immune for withholding evidence).

Mr. Souza's complaint fails to allege specific acts or wrongs attributable to the Sheriff's defendants. The events at issue address institution or prosecution of judicial proceedings within the scope of employment of Detective Swiggert and Sheriffs Carlson and Pazin to cloak them with section 821.6 immunity. In turn, the Sheriff's Office is relieved of liability under California Government Code section 815.2(b). As such, Mr. Souza's claims against the Sheriff's defendants are barred.

**Valid Arrest Warrant**

The Sheriff's defendants argue that a valid arrest warrant entitles them to immunity. These defendants quote at length from *Brady v. Hill*, 187 F.3d 104, 112 (1st Cir. 1999):

> To the contrary, once probable cause has been established, a warrant issued, and an arrest perfected, the ordinary course is for the prosecutor to decide whether to go forward, and if he elects to proceed, for the judicial branch to make the final ascertainment of guilt or innocence – not for the police to take matters into their hands.
>
> . . .
>
> . . . Consequently, in a situation in which a warrant has issued upon probable cause, a police officer is not called upon either to exercise discretion or to weigh the proof. Rather, his obligation is more straightforward: to execute the warrant – which is, after all, a judicially-approved order – according to its tenor and terms, detaining the individual named therein. To place on police officers the additional burden of determining, after a legitimate arrest pursuant to a facially valid warrant, whether the person detained is or is not the guilty party would blur the usual separation of functions. The Constitution imposes no such burden on the police.

The Sheriff's defendants argue that Mr. Souza's arrest was made pursuant to a valid search warrant and that the judicial branch was to make final ascertainment of guilt or innocence after probable cause was established, the arrest warrant issued and Mr. Souza's arrest perfected. The Sheriff's defendants conclude that the obligation of the Sheriff's Office or any of its employees was "to execute the warrant and detain the person."

In the absence of suggestion that Mr. Souza's arrest warrant lacked probable cause, execution of the arrest warrant was proper to further insulate the Sheriff's defendants from liability for Mr. Souza's

1 claims.

## ***Monell* Liability**

The County argues that it is not subject to *Monell* liability in that its District Attorney acts as an arm of California, not the County, to prosecute and investigate crimes.

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018.

A local government is liable under section 1983 for its policies that cause constitutional torts. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784, 117 S.Ct. 1734 (1978). "These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'" *McMillian*, 520 U.S. at 784, 117 S.Ct. at 1736 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-2038). A court's task is to "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2724 (1989).

The County points to *Pitts v. County of Kern*, 17 Cal.4th 340, 362, 70 Cal.Rptr.2d 823, 837 (1998), where the California Supreme Court held that a California district attorney acts for California, not as a county policymaker, to prepare and prosecute criminal cases to avoid a county's section 1983 liability for such prosecutor actions. In *Pitts*, 17 Cal.4th at 356-357, 70 Cal.Rptr.2d at 833-834, the California Supreme Court noted that the Attorney General supervises each county district attorney, pursuant to article V, section 13 of the California Constitution, which provides in pertinent part that the "Attorney General shall have direct supervision over every district attorney . . . in all matters pertaining to the duties of their . . . office." The County further points to California Government Code section 12550 which provides that the "Attorney General has direct supervision over the district attorneys of the several counties of the State." The California Supreme Court in *Pitts*, 17 Cal.4th at 359, 70 Cal.Rptr.2d at 835, pointed out that under California Government Code section 25303, a County board of supervisors "shall not obstruct the . . . investigative and prosecutorial function of the district attorney of a county."

Moreover, a "county district attorney prosecuting a criminal action with a county, acts as a *state* officer, exercising ultimately powers which may not be abridged by a county board of supervisors." *Hicks v. Board of Supervisors*, 69 Cal.App.3d 228, 240, 138 Cal.Rptr. 101 (1977) (italics in original).

Mr. Souza's complaint fails to allege specific acts or wrongs attributable to the County. Based on the above authority, the DA defendants acted as an arm of California, not the County, to absolve the County of liability.

### Punitive Damages

Defendants seek to dismiss Mr. Souza's punitive damages claims on grounds that such damages may not be recovered against public entities and employees. California Government Code section 818 prohibits imposition of punitive damages against public entities under California law: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." Defendants also point to *Newport v. Fact Concerts, Inc.*, 45 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981): "In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials. Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."

Defendants point out that a public entity is immune from punitive damages. Although defendants provide no authority that public employees are immune from punitive damages, the individual defendants are entitled to immunity to avoid punitive damages liability. Mr. Souza's absence of opposition is a concession that punitive damages are not recoverable here. As such, the punitive damages claims are subject to dismissal.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court DISMISSES with prejudice Mr. Souza's (first) section 1983, (second) defamation and (third) intentional infliction of emotional distress causes of action. This Court construes Mr. Souza's lack of opposition as a concession that his claims are barred

/ / /

1 | to warrant no attempt to amend his complaint.  This Court DIRECTS the clerk to close this action.
2 |       IT IS SO ORDERED.
3 | **Dated:   June 11, 2007**             /s/ Lawrence J. O'Neill
                                            UNITED STATES DISTRICT JUDGE